So now I'll call the case of Claudio Marcello Rojas v. Field Office Director, Miami Field Office, and others. May it please the Court. My name is Alina Das and I represent Appellant Claudio Rojas. The main question in this case is whether federal courts are powerless to review the constitutionality of ICE's actions to arrest, detain, and deport a prominent immigrant rights activist in retaliation for his core political speech criticizing ICE and the public attention that speech has received. The district court erred because it never reached the underlying constitutional issue. It erroneously concluded that 1252G deprived it of the authority to even consider the claim. And due to that error, it allowed ICE to deport Claudio Rojas, a husband, father, and grandfather, who spoke out against the cruelty of immigration detention and whose voice and activism were featured in the 2019 documentary, The Infiltrators. ICE's actions constitute outrageous retaliation. It arrested Mr. Rojas just days after being notified of the film Sundance premiere. It revoked the order he received in 2012 that authorized him to live and work in the U.S., citing reasons for revocation that the government today concedes are false. And it aggressively pursued the exile of a man who would otherwise be the lowest priority for deportation. These actions made international headlines precisely because they sent the message, criticize ICE and ICE will deport you. There are two ways in which the district court's failure to reach the merits of the First Amendment claim were in error. First, under this court's precedent, 1252G does not reach non-discretionary claims. Mr. Rojas' claims are non-discretionary because the government does not have the discretion to violate the constitution. Reno v. AADC, the main case relied upon by the government, doesn't stand for a contrary result. In AADC, the Supreme Court reached the merits of the First Amendment claim and for reasons that have no application to this case, rejected it. Had the district court reached the First Amendment claim here, it would have found an outrageous violation of the First Amendment. This is viewpoint discrimination against core political speech, conduct prohibited by long-standing precedent that holds that First Amendment protections are at their zenith when the U.S. government weaponizes their authority to silence dissent in areas of pressing public concern. And second, even if the district court was correct that 1252G textually applies to a non-discretionary constitutional claim, it erred because it never considered whether 1252G was then unconstitutional as applied here. This is the approach that the Second Circuit took in Rogbier v. Holman and notably concluded... Counsel, I don't understand how you are getting around the language of the statute itself. It expressly declares that no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to execute removal orders against any alien under this chapter. Why doesn't that language expressly deprive federal courts of the authority to grant the relief you're requesting? Yes, Your Honor. The language in 1252G does not explicitly speak to constitutional claims. And in Madu and Alvarez, this circuit has held that while 1252G shields certain acts of prosecutorial discretion from judicial review, it doesn't limit the judiciary's authority to review the underlying legal bases of those actions. But even if this court were to hold that 1252G does reach a constitutional claim, that would raise the question of whether it is unconstitutional as applied here. And that is what the Second Circuit approached the case in Rogbier v. Holman and concluded that ISIS targeting of a prominent immigrant rights activist for deportation does raise a culpable claim of outrageous First Amendment retaliation, exactly what AADC held open in its case. And that requires review. Counsel, I'm sorry. I have a question about mootness. To me, that is the biggest challenge in this case. Why is this case not moot? Are you arguing that there are collateral consequences from his detention and from his removal, I guess I should say? And if so, what are those collateral consequences that shield this from mootness? And if not, then what is the basis for there not being mootness? Yes, Your Honor. Well, the case isn't moot because the challenge to deportation is still alive. We are challenging the fact that he was deported in retaliation for the exercise of his core political speech, his First Amendment rights, and that this court can redress that error and order his return or remand to the district court to address the error in the first instance and address the First Amendment claim. Let me just be sure I understand. You are not arguing that there's a collateral consequence from his deportation? No, Your Honor. We're arguing that there is a direct consequence that his deportation itself was unlawful and that detention claims related to that remain live because if he is returned as a result of that challenge, his detention, his future confinement would be subject to challenge. And this might relate to this court's prior interlocutory denial, so I do want to quickly address that, that that previous denial where this court denied the interlocutory appeal to stay of removal shouldn't prevent this court from addressing the First Amendment claims, and that's for three reasons. This court has held that the interlocutory denial is not law of the case, and it's seen here that was truncated briefing where there was no final judgment, and the court never reached the question of whether the Constitution requires review. And since that time, there's been intervening case law. The court didn't have the benefit of the Roggebeer decision from the Second Circuit or a series of Supreme Court cases that underscore the importance of judicial review. So we are very much... Counsel, I'm sorry, but can we go back to the mootness issue? I just want to make sure I understand what your argument is for why it's not moot. Would you just review that with me in a little bit more detail, please? Yes, Your Honor. The case isn't moot because Mr. Rojas is challenging his deportation. He's challenging the execution of the removal order on constitutional grounds. And if this court holds that the district court erred by not reaching that claim, it is able to remedy the injury here and order the district court to address that issue. And if the district court finds that... I'm sorry, how could we remedy the issue? Remedy the injury. It would work the same way in any case where an individual is challenging his deportation, seeks review to this court. If the court finds the deportation was an error, that individual would have the right to return to the United States and be restored to the status he was prior to the unlawful violation. Is it an alternative to doing all this under your petition for a writ of habeas corpus? Yes, Your Honor, that's right. Under the writ of habeas corpus. How do you get around, I'm going to butcher the pronunciation, but thoracegum? Yes, Your Honor. Thoracegum is a border entry case where the petitioner conceded that his confinement was lawful and was seeking to use habeas in order to gain his initial entry to the country. And that's not what we're seeking here. Mr. Rojas is using habeas to challenge his confinement and his deportation. At the time he filed his habeas petition, he was in the United States. He had been here for nearly two decades. And challenging confinement and deportation is precisely what habeas has always been used to do. And where the court's equitable... The only traditional means under habeas is to secure release from unlawful detention. And that any attempt to invoke the writ to obtain additional administrative review or continued authorization to stay in the country is an improper use of the writ. Your Honor, what the Supreme Court said is that the traditional remedy for habeas is release from an unlawful restraint on liberty. And that is what an unlawful deportation order is. And the Supreme Court makes that clear. It makes it very clear that it was denying the writ and the suspension clause argument with respect as applied to an individual who had no ties to the country and who was essentially using habeas to gain entry. And on page 1981 of the Thoracosium decision, it specifically says that it is not disturbing, that it is actually preserving long-standing precedent that has held that because of the suspension clause, some judicial intervention in deportation cases is unquestionably required by the Constitution. And there it cites St. Cyr and Hekalila. And in those cases, the court has held, and it states this in the opinion, that it is long held that the writ could be invoked by aliens already in the country who are held in custody pending deportation. St. Cyr reaffirms this proposition. Your client has been deported. And I guess I'm asking the same question Judge Rosenbaum is asking. Why doesn't that render his claim for habeas relief moot? We can't release him. He's gone. Yes, Your Honor. At the time that Mr. Rojas filed his writ of habeas corpus, he was in the country. And he was challenged in his deportation. And the Supreme Court says that those types of challenges are cognizable under the writ of habeas corpus. But that wasn't true in Sir Azizian's case, that he brought the action originally and then he was deported. Yes, that's correct. Wasn't it? In Sir Azizian, the court held that the individual should be treated as if he was at the border, that having gone 25 yards into the border, having no initial contact to the U.S., was not enough to convert this from a border entry case into a case of an individual with ties to the U.S. challenging deportation. If this court holds— Your client never availed himself of administrative review and then a petition from the final decision of the Board of Immigration Appeals to the 11th Circuit, did he? He never challenged the validity of his removal order to the circuit, and that's a 2010 removal order. That doesn't mean that he falls outside of the protections of the First Amendment for what happened to him in 2019. If we agree with your position that any claim as used in 1252 excludes constitutional claims, you're seeking to engraft an exception, are you not? Because the claim clearly arises out of the execution of the removal order by the Attorney General. I just don't see how you can conclude anything else. Well, AADC specifically states that they had to address whether or not there was a First Amendment claim in order to determine whether they should apply the canon of constitutional avoidance to the interpretation of 1252G. And in this case, what we're stating, and this is what the Second Circuit has held, is that if there is an outrageous First Amendment retaliation claim, a federal court does have to review that, that 1252G cannot strip that claim, both under the suspension clause as well as under the First Amendment itself. If Mr. Rojas had First Amendment rights that were violated by ICE's actions— Counsel, your argument has expired. Thank you. If I may just finish my sentence? Yes, I actually have a question for you, too, before you sit down. Yes, please. Thank you, Your Honour. If this court holds that Mr. Rojas cannot bring his First Amendment claim where ICE acted to revoke the order that he had that gave him permission, which happened subsequent to his removal order, if ICE's actions in 2019 are not reviewable, that is essentially saying that millions of people in the United States do not have a First Amendment right at all, and the Constitution does not allow that. Under Article III, the judiciary has to be able to review whether this claim is viable. This is Beverly Martin. So, as I understand it, there was no consideration for Mr. Rojas' T-visa. So, that's still outstanding. He made a valid application for a T-visa, and that was never undertaken. Am I right about that? Yes, Your Honour. His T-visa application was submitted, but it was denied because physical presence in the U.S. is a requirement for a T-visa. And we argue that ICE's actions to deport him prior to that adjudication rendered him ineligible for the T-visa, and that violated his due process rights. And we would also note that a T-visa isn't a discretionary benefit the way certain immigration benefits are. If a person meets the eligibility requirements and a T-visa is numerically available, the USCIS must approve the application. And so, in this sense, his right to an adjudication of that application was denied by ICE's actions. Okay, so here's my question about that. Is it your argument that the district court or this court has the authority to bring Mr. Rojas back so that he can adjudicate his T-visa application? And if so, what's your best authority for that? Yes, Your Honor. And essentially, again, the issue here is that ICE's actions were intended, and this is our argument, that their actions were intended to deprive him of his due process right to that adjudication, to deprive him of the First Amendment right to speak out, and that by deporting him, it cannot be the case that that triggers mootness because essentially that means if ICE is able to move quickly enough, the court is never able to review the case, and that would fall into a mootness exception. And the power to bring him back is to simply restore him to the status quo. He would have been but for the error in the district court's opinion. And certainly this court has done this in other cases where individuals have been deported pending review. There's Singh v. Attorney General, which is a 2015 case, and that is at docket number 15-101-36. And certainly it's the ultimate outcome of any case where a circuit is reviewing the legality of a deportation and decides that it was unlawful. The ICE has a policy of facilitating review when there are decisions that have demonstrated there is unlawful action, and this is something that if the court remands the decision to the district court for a full review of his constitutional claim, we would be able to work out with the government at that stage. Thank you. And we'll give you your full time for rebuttal. Thank you. Mr. York? Thank you, Your Honor. Can everyone hear me? Yes. Yes. May it please the court, my name is Benton York, and I'm appearing for the United States, the appellee in this case. The court should affirm the denial of the habeas petition because the petitioner's claims are moot, and even if not as this court already properly determined, his claims are barred under the INA's jurisdictional channeling provisions. His claims are moot as for the same reasons that were articulated by this court's decision in the Mahmoud case. He is no longer detained, and therefore there's no relief from detention that this court can grant to him. He is challenging his deportation, which has already taken place, and accordingly the court cannot stop a deportation from taking place. The petitioner did have avenues for challenging his removal, and he did not take advantage of those. He entered the country, these facts are undisputed, that he entered the country in 2000 and overstayed a 90-day visa, that he agreed to voluntarily return to Argentina in 2010, but then did not, undisputed that he is subject to a final order of removal, and that he did not challenge that to the BIA. He filed a motion to reopen his proceedings in 2012, but that was denied and he did not appeal it. He filed a motion to reopen in 2019, but it was denied, and he also did not appeal that. The INA provides avenues to challenge removal proceedings, and this petitioner did not take advantage of the administrative proceedings that were provided to him under the statute. And this court already ruled that his claims are judicially barred, they are jurisdictionally barred under 1252G, that it's undisputed, or it cannot be reasonably disputed, that his removal, which is exactly what the petitioner is challenging, his deportation is what is being challenged, and that that claim arises from a challenge to the execution of a final order of removal, which 1259G clearly bars review from. Well, counsel, what do you say about, I mean, you know, in this circuit we have this case called Maydew, and Maydew says, it basically says, it's interpretation of AADC, is that only those specific three things that are mentioned in the statute are barred, but any underlying decisions, legal decisions, that must be made that are not discretionary, before the discretionary decisions are made, are reviewable. Maydew says that. First of all, let me ask you, do you think I have misconstrued Maydew? Your Honor, I think that I would maybe construe the reach of the holding is not necessarily that broad. I think that Maydew is distinguishable from this case, because the dispute there was, was there a final order of removal at all, and it did not seek review of a decision to execute on a final order of removal, and to that extent, I think, a very different case than this one. Well, it is a different case. I'm not suggesting it's the same case, but in order to reach the conclusion that was reached in Maydew, we had to find that legal issues, sort of preliminary legal issues, that have to be determined before the discretionary decision can be made are reviewable, and that's what we held. So why doesn't that rule apply here? Well, Your Honor, I think that that doesn't apply here, because this is a situation where the government did have discretion. It's not disputed that there's a final order of removal, and that the government had discretion to execute on that final order of removal. It had discretion to execute on the order of removal, as long as it wasn't doing it for an illegal reason. And, you know, AADC says that, you know, there's possibly an outrageous First Amendment scenario where it could be a problem. I mean, it leaves open that door. Does it not? I think that that language is best construed as dicta. I think that the Second Circuit's holding in Ragbeer, which kind of built off of that, stands as an outlier that right now is on – there's a cert petition that's fully briefed to the Supreme Court, and I think following Thursigium, that case is greatly in doubt. Okay, well, there's dicta, and there's Supreme Court dicta. And even if you want to characterize this as Supreme Court dicta, it does say that there's possibly an open door for an outrageous situation. It seems to me the situation couldn't be much more outrageous than what we have here. For nine years he was in this country after receiving his notice of removal, no one bothered him, nothing happened until the documentary was made and he was asked to speak at the film festival. That seems problematic. Does that not seem problematic to you? I mean, would you agree that if the reason he was deported was because he was exercising his First Amendment rights, that would be a problem? Well, I think that also what is said in AADC is that the holding there includes the part that an alien unlawfully in the country has no constitutional right to assert selective enforcement as a defense against deportation. And I would also point the court to the Neves case that's, I guess, relatively recent from 2019 from the Supreme Court that makes it clear that where there's probably a call to execute on an arrest, that that is a defense to retaliatory arrest claims absent and a showing of, I guess, at that point the plaintiff would have to show objectively that there was retaliation to be able to overcome that and that showing wasn't made. The district court didn't end up ruling on those decisions and I think that those cases would push back on that claim. Well, why wouldn't we send it back if we found that it wasn't moved and there was jurisdiction, and if there were jurisdiction, I guess it would require us to take a preliminary look at these merits. But why would we not then send it back to the district court to do the first take on this? I think, Your Honor, if that is the tact that the court ended up taking, that that would be the appropriate remedy would be to remand it to the district court to be able to flush out those issues in the first instance. But that's not the remedy that the petitioner here is seeking, is it? The petitioner wants us to order his return from Argentina so that he can be in court to prosecute those claims. Yes, Your Honor, that's correct, and I think that that is where you really get into the resignum. I think if you look at footnote 12, it makes it very clear that habeas does not cover the types of relief that the petitioner is seeking here, which really are even more expansive than what was sought in thoracidium, where here, and I apologize, I know I'm throwing a third pronunciation into the discussion. I'm sure there will be more, but thoracidium makes it clear that the type of relief that habeas encompasses for purposes of the suspension clause stem from a release from unlawful detention, and that is not what is being sought here. What's being sought here is a person who is undisputedly does not have legal status to be present in the United States right now, who is asking to be returned to the United States and be returned to being under an order of supervision, which an order of supervision is not even relief from removal. That's relief from detention pending removal. Ms. New York, this is Beverly Martin, and this is kind of all late-breaking precedent, so I'm trying to get in my mind how it all fits together. It is not the government's position, or is it, that theracidium has overruled St. Cyr. That's not your position, is it? Your Honor, I don't believe that is the government's position. It's certainly not making that argument here today, and we didn't make that argument in our brief. I'm interested in what you're going to say. Sorry for interrupting. Well, I was going to say that footnote 12, I think, addresses St. Cyr specifically, where they say, nor do we consider whether the scope of the writ as it existed in 1789 defines the boundary of the constitutional protection to which the St. Cyr court referred, since the writ has never encompassed respondent's claims. So, in other words, the Supreme Court is saying that even given St. Cyr, this is what the suspension clause means. So, it seems like Mr. Rojas's lawyer is, I mean, somehow, if it didn't overrule St. Cyr, then somehow we've got to live with both of them. And so, Mr. Rojas's lawyer makes the distinction, well, theracidium is a border case, and, of course, we all know that the executive's power is at its height at the border, but this is not a border case. Do you disagree with that distinction helping enable us to live with both cases? So, I think that that distinction does not play into what the scope of the suspension clause means, that that part of the court's holding really was not based on an analysis of what the degree of his rights were or based on, you know, whether he had been in the country for a long time or had been in for five seconds, but instead was an analysis of what is the type of relief that is contemplated by the suspension clause. And I think that an important distinction to make is that St. Cyr did come down before the 2006 Real ID Act was passed and that that really clarified even further what Congress's intent was with the jurisdictional channeling provisions under the INA. But as to habeas, you know, I mean, St. Cyr did speak to the relief of habeas, and St. Cyr still lives. I think you said you agree with that. Well, and I think that habeas... Thank you. I think it's important to note that there, you know, certainly under the provision it does spell out where habeas claims remain available in situations where a person is challenging, you know, whether they actually are under an order of removal. That is further down in 1252, or I apologize. I should have that specific reference. But I think that there are circumstances where habeas remains an option in immigration proceedings. But here Congress has very clearly set out that there are ways to challenge your removal proceedings. What would be an example of where habeas is available in immigration proceedings? I think that there are three specific exceptions that are outlined in the statute where there are sort of very specific factual issues about, you know, the identity of the person or those types of issues. Again, I apologize. I can provide that to the court. No, that's all right. I know your time is running out, but I wanted to press you on your argument that you started with about how Mr. Rojas didn't seek certain redress that was available to him. And you said specifically that he could have followed up on his motion to reopen, but he did follow a motion to reopen after he was re-detained, and then he was deported before that motion was adjudicated. So I just find it troubling that it seems to me your position is we don't have to adjudicate these claims because we can just go ahead and deport people and then their case is moved. I mean, that just seems to me it can't be right. Do you think that's right, that you can just foreclose the adjudication of these issues raised by deporting people and then say, oh, their case is moved? Well, I think the Mahmoud case is a great example where it was true that his habeas claims were moved, but as we speak, his petition for review remains subject to adjudication in the Ninth Circuit. And so I think pointing the court to the way in which... Your argument has expired. Thank you. If I may just... And also, when you're done, I have a question, too, if that's all right with you, Judge Martin. Yes, it is. Thank you. So 1252B9 states that judicial review of all questions of law and facts, including interpretation and application of constitutional and statutory provisions arising from any action taken or proceeding brought to remove an alien from the United States under the Subchapter shall be available only in judicial review of a final order under this section. And that gets channeled into the petition for review process in 1252A5. So Mr. Mahmoud, you know, could ultimately feed on his petition for review, and that would allow him to return to the United States. And so that's a situation where, you know, it's just the specific choices that were made to litigate this particular case that have cut off the opportunities for the petitioner to challenge his removal. So, counsel, just to put a finer point, I think, on what Judge Martin may be asking, it seems to me... Let's imagine a case where we know with certainty that the only reason a person is deported is because the United States is retaliating for the person's exercise of First Amendment rights and has done so in an outrageous way. Let's just assume that is the presumption in this question. How would the person, assuming what happened along the way here, how would the person go about having that reviewed? How would you do that? I mean, you know, in this situation where there's an order of removal, but the order of removal is many years old. No one's acting on it. But then there is an exercise of First Amendment... There's really an ongoing exercise of First Amendment rights, but it sort of culminates in this presentation of this film and a request for him to speak at the presentation of the film. And then he is actually removed. And then as the execution of the removal order begins, what would have been the appropriate way for him to go about challenging that and to have that heard before he was actually deported? If he's challenging the notion that his removal order is being executed on only because of his First Amendment exercise of right. Your Honor, I think, I guess, obviously, I think that that's a different case than what we have right here. But I think to answer your question, that what the INA has laid out is the process that is available for people to challenge their removal proceedings, including the execution of removal orders, is through the petition for review process. And I think that the motion to reopen would most likely be the avenue that he could challenge that. But I think that... But how would that work? I mean, if the challenge is to the execution of the removal order, but he's not actually challenging the removal order. He's only challenging the execution of it because it's being executed for an unconstitutional reason. How would that work in the motion? How does that address the issue? And wouldn't you then say what you're saying here today, which is, you know, he can't do it under the jurisdiction stripping provision? Well, I think, Your Honor, I agree that it's a difficult question. I think that ultimately that's what Reno or AADC speaks to about why... Is that fair to say? It's okay if it is. I just want to understand your position. I think that he certainly can't do it through a habeas petition. I think that's what Thursigian says. Well, how could he do it then? Or maybe he can't do it at all, which, again, is fine if that's your position. I just need to know what your position is. Is your position that he just can't challenge? There's no way that he can challenge the illegal execution or the unconstitutional execution of a removal order when the removal order that's underlying it is not being challenged? I think that the answer is that he can do that through the immigration court process that's outlined under the INA. I think that's where any claim like that would go. I don't understand how. I'm sorry to belabor the point because I know we're way over, but I wanted to give you one more chance to explain how he could do this, with specificity other than saying, well, it's through the removal process that's outlined. How specifically would he do it? Well, and I think it's where, I guess, first, I stipulate that I don't think the government would agree that there is a claim here because there was probable cause for his arrest. I think the way that he would do it would be to file a motion to deal with the Board of Immigration Appeals. Okay, so just to be clear, you're saying that there's not a way that he could succeed on such a claim no matter how outrageous the reason for the execution of the removal order is. Is that what you're – it's okay if it is. I just need to understand what your position is. Do you understand what I'm saying? I think that what I'm saying is that he could file a motion to reopen, including a motion to stay his removal with the Board of Immigration Appeals, and that they would have jurisdiction to address the claims that he would bring. But that's what Mr. Rowe has to do. He filed a motion to reopen, and it was removed before it was adjudicated. But that did not moot his motion to reopen, though. Oh, so it's not moot. Well, I guess what I'm saying is that is the way to – like Mr. Mahmoud, is that his claims that this court addressed were moot, and his petition for review was not moot, and that continues to be litigated at the Ninth Circuit. But it's litigated in his absence, right? That's not what Rowe Haas is asking for. He wants to litigate these claims by having this court order him returned. I think that's correct, that that is what is being requested, and I think that the Supreme Court's precedent establishes that the court doesn't have jurisdiction to do that through a habeas petition. All right. Anything further from my panel? All right. Thank you, Mr. York. We appreciate the presentation. Thank you, Your Honor. So this is Alina Das on rebuttal for Mr. Rowe Haas. I just want to quickly address a few of these important points, the first being what we're challenging here. We are challenging the revocation of Mr. Rowe Haas's order of supervision in 2019. We're challenging ICE's actions to remove him in violation of his First Amendment rights. These are not claims that can be brought through the typical removal process because the entire removal proceeding process, including motions to reopen, relate to the validity of an underlying removal order. This is the kind of now-or-never claim that Justice Ginsburg in the AADC case in her concurrence explained would require judicial review because that would be the only way an individual could raise their First Amendment rights. Why couldn't he do that without him being personally present in the United States? And thank you, Your Honor. I appreciate that. Given the fact that Mr. Rowe Haas has been deported and we are arguing that the district court's error is that the district court didn't even reach the First Amendment claim. It didn't reach the constitutional issues. While we believe this court does have the authority to order Mr. Rowe Haas's return, that isn't the minimum of what we're asking. We're asking at minimum that this court remand the case to the district court to consider the constitutional claim. And at that point, we can discuss whether it's appropriate for Mr. Rowe Haas to return as part of the adjudication of his First Amendment case. What would the jurisdictional basis be if he can't do it in habeas? Well, Your Honor, if he's not able to address his claim either through habeas or federal question jurisdiction, then yes, there is no mechanism for him to raise his claim. And that's precisely what we say is the problem. We do take the position that 1252G doesn't apply. A revocation of an order of supervision is not one of the actions discussed in 1252G. And as we discussed, the circuit's precedent in MADU does say that courts do have the authority to review the legality of these underlying orders. And if that is the direction this court takes, it doesn't need to get into any of the habeas questions. It can simply hold that under statutory habeas and under federal question jurisdiction, the district court should have addressed whether or not there was a First Amendment violation in this case. And we think that's incredibly important here because it is our allegation that but for Mr. Rowe Haas' activism, he wouldn't have been deported. We're not arguing that the government has no authority to deport him whatsoever. We're saying that he can't be deported for an unconstitutional reason. And that's what makes this a classic First Amendment case in line with Perry v. Sinderman and all of the other cases that said that the government can't do certain actions based on people's protected First Amendment speech. And we know that because- Would you concede that that could go forward without his personal presence? Yes, Your Honor, we do concede that the district court can address whether there is a viable First Amendment claim of outrageous discrimination, essentially whether this case fits the AADC outrageous discrimination opening, without Mr. Rowe Haas being here. Now, it would be our position before the district court that if the district court finds that there is a viable claim, then certainly Mr. Rowe Haas would have the right to participate. And there are plenty of mechanisms that ICE has to bring individuals back through humanitarian parole, to restore them to his order of supervision. But that's not issues that this court necessarily needs to decide, nor does it implicate habeas power in terms of the court's order, since it depends on the nature and the scope of the First Amendment claim at issue. And that's something that the district court can decide on remand. But the main problem in this case is that the district court essentially didn't reach the First Amendment issue at all. And that effectively tells ICE that they may arrest, detain, and deport any immigrant who dares to criticize them without judicial review. And as the amicus brief in this case describes, that's a huge First Amendment problem, not only because it chills the speech of immigrants, but it hinders the entire public's understanding of immigration policies, and it allows a government agency to manipulate the public debate. And that's exactly what the First Amendment at its core was designed to protect against. There's a reason that the Supreme Court in AADC held open the possibility of this kind of outrageous First Amendment claim. And for the district court to reject this case based on 1252G alone and not even reach that issue, that is the problem. That in and of itself creates a First Amendment problem because it essentially creates a gaping hole in the First Amendment. And with respect to the government's argument pointing to Nieves, where they argue that probable cause for arrest is a reason to not recognize a First Amendment claim, that case has no application here. It's a criminal case in the damages context. And if you read Justice Gorsuch's concurrence in that case, he makes it very clear that when police do target individuals because of their protected political speech, that is a First Amendment violation. The question in the case wasn't whether they were violating the First Amendment. It was whether there could be a cause for damages under 1983.  Thank you. We'll just finish my sentence. ICE was actively targeting Mr. Rojas. Sundance Institute wrote to ICE and stated they wanted Mr. Rojas to speak at the Sundance premiere of the documentary. At his very next check-in, ICE arrested him, detained him. They took his name off of the detainee locator in the jail. They rejected a request from a journalist to speak with him. He had been checking in for seven years without incident, including at least six appointments under the current administration. This is tied to the proximity of the criticism of him being a protagonist in a film critical of ICE. This sent a chilling message across the immigrant rights debate, and we ask that this court send it back down to the district court to actually look at the First Amendment issue. Thank you, Ms. Doss. I found the argument very helpful, so thanks to both counsel. Thank you. Thank you, Your Honor. Thank you.